## NORWOOD ET AL. *v.* KIRKPATRICK, U. S. DISTRICT JUDGE.

No. 337.   Argued March 4, 1955.—Decided April 11, 1955.

*Joseph S. Lord III* argued the cause and *B. Nathaniel Richter* filed a brief for petitioners.

*H. Francis DeLone* argued the cause for respondent. With him on the brief was *William H. Lowery.*

MR. JUSTICE MINTON delivered the opinion of the Court.

The three petitioners, dining car employees, filed separate suits in the United States District Court for the Eastern District of Pennsylvania, against the Atlantic Coast Line Railroad Co.   They sued under the Federal Employers' Liability Act for injuries received upon the

derailment of one of defendant's trains near Dillon, South Carolina. The defendant filed motions to dismiss or, in the alternative, to transfer the cases to the Florence Division of the Eastern District of South Carolina. The District Court denied the motions to dismiss and granted the motions to transfer under 28 U. S. C. § 1404 (a).*

Since the Court of Appeals for the Third Circuit had held, in *All States Freight* v. *Modarelli,* 196 F. 2d 1010, that the order for transfer was not appealable, the petitioners filed applications for mandamus or prohibition to the district judge in order to require him to set aside his orders of transfer. The Court of Appeals denied the applications, and we granted certiorari. 348 U. S. 870.

The cases of the three petitioners present identical questions of law, were consolidated for argument here, and will be disposed of in this opinion.

The district judge in granting the motions to transfer stated that if he had been free to construe § 1404 (a) as he did in the case of *Naughton* v. *Pennsylvania R. Co.,* 85 F. Supp. 761, he would have denied the transfers because, in his view, it called for an application of the stricter rule of *forum non conveniens* as recognized in decisions of this Court. See *Gulf Oil Corp.* v. *Gilbert,* 330 U. S. 501. But since the *Naughton* case, the Circuit Court of Appeals for the Third Circuit had held, in *All States Freight* v. *Modarelli, supra,* that the district judge had a broader discretion in the application of the statute than under the doctrine of *forum non conveniens.* The district judge, therefore, followed the rule laid down in the *All States Freight* case, *supra.* We think the Court of Appeals correctly rejected the narrower doctrine of *forum non conveniens* and properly construed the statute.

---

* "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

As Judge Goodrich, speaking for the court, appropriately pointed out, at p. 1011:

> "The *forum non conveniens* doctrine is quite different from Section 1404 (a). That doctrine involves the dismissal of a case because the forum chosen by the plaintiff is so completely inappropriate and inconvenient that it is better to stop the litigation in the place where brought and let it start all over again somewhere else. It is quite naturally subject to careful limitation for it not only denies the plaintiff the generally accorded privilege of bringing an action where he chooses, but makes it possible for him to lose out completely, through the running of the statute of limitations in the forum finally deemed appropriate. Section 1404 (a) avoids this latter danger. Its words should be considered for what they say, not with preconceived limitations derived from the *forum non conveniens* doctrine."

Judge Maris, who was Chairman of the Judicial Conference Committee on the revision of the Code and approved the text submitted to Congress, sat on the Court of Appeals *en banc* when *All States Freight* was decided. And Judge Parker of the Fourth Circuit, consultant to the Advisory Committee, writing for the court in *Jiffy Lubricator Co., Inc.* v. *Stewart-Warner Corp.*, 177 F. 2d 360, 362, also construed the statute as we understand it:

> ". . . A dismissal in application of that [*forum non conveniens*] or any other principle puts an end to the action and hence is final and appealable. An order transferring it to another district does not end but preserves it as against the running of the statute of limitations and for all other purposes. The notion that 28 U. S. C. A. § 1404 (a) was a mere codification of existing law relating to forum non conveniens is erroneous. It is perfectly clear that the purpose of

> this section of the Revised Judicial Code was to grant broadly the power of transfer for the convenience of parties and witnesses, in the interest of justice, whether dismissal under the doctrine of forum non conveniens would have been appropriate or not."

See also Moore, Commentary on the Judicial Code (1949 ed.), p. 208.

When Congress adopted § 1404 (a), it intended to do more than just codify the existing law on *forum non conveniens*. As this Court said in *Ex parte Collett,* 337 U. S. 55–61, Congress, in writing § 1404 (a), which was an entirely new section, was revising as well as codifying. The harshest result of the application of the old doctrine of *forum non conveniens,* dismissal of the action, was eliminated by the provision in § 1404 (a) for transfer. When the harshest part of the doctrine is excised by statute, it can hardly be called mere codification. As a consequence, we believe that Congress, by the term "for the convenience of parties and witnesses, in the interest of justice," intended to permit courts to grant transfers upon a lesser showing of inconvenience. This is not to say that the relevant factors have changed or that the plaintiff's choice of forum is not to be considered, but only that the discretion to be exercised is broader.

It is conceded by the petitioners that if the district judge was correct in exercising his discretion to transfer these cases under § 1404 (a) without regard to the stringent requirements of *forum non conveniens,* then the Court of Appeals properly denied the applications for mandamus and prohibition. Since we agree that the district judge correctly construed the statute in evaluating the evidence, we do not find it necessary to detail the facts considered by him in reaching his judgment. It was correct in law and warranted by the facts.

Since we find that the district judge properly construed § 1404 (a), it is unnecessary to pass upon the question of whether mandamus or prohibition is a proper remedy. The judgment is

*Affirmed.*

Mr. Justice Harlan took no part in the consideration or decision of this case.

Mr. Justice Clark, with whom The Chief Justice and Mr. Justice Douglas concur, dissenting.

Under this judgment, Alexander Norwood, who lives in Philadelphia where he filed this suit for damages against the railroad, will have to go to South Carolina if he wishes to prosecute it. Joseph Tunstall and John Smallwood, both of whom live in Washington, D. C., will likewise have to go all the way to South Carolina if they hope to recover any damages against the railroad. All three allegedly suffered permanent injuries when a passenger train on which they were employed was derailed. The derailment, with which the plaintiffs had no connection whatever, is sufficient in itself to support a finding of negligence. See *Jesionowski* v. *Boston & Maine R. Co.*, 329 U. S. 452. Despite these circumstances, the district judge deprived Norwood of a trial in his home town, and Tunstall and Smallwood of one within 150 miles of theirs. This Court's decision, sustaining that result, sends the case to South Carolina, perhaps preventing it from ever being prosecuted because of the financial condition of the plaintiffs.

This is thought justified by an interpretation of § 1404 (a) of the 1948 revision of the Judicial Code, 28 U. S. C. § 1404 (a). It provides:

> "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

As words on a page torn from the history of our judicial development, this direction is utterly meaningless. How great must be the inconvenience before a judge could feel justified in ordering a transfer? When would it be "in the interest of justice" to do so? It is not difficult to imagine the baffled reactions of our judiciary were this mandate not accompanied by some explanation, were it not preceded by some experience in dealing with pleas to decline suits because of inconvenience and injustice. Compare the gropings of this Court and the remainder of the federal judiciary when confronted with the blank pages presented by the celebrated § 301 of Taft-Hartley. See *Association of Westinghouse Salaried Employees* v. *Westinghouse Electric Corp.*, 348 U. S. 437.

But, fortunately, the command of § 1404 (a) is accompanied by both history and explanation. The Reviser's Notes state:

> "Subsection (a) was drafted in accordance with the doctrine of forum non conveniens, permitting transfer to a more convenient forum, even though the venue is proper. As an example of the need of such a provision, see Baltimore & Ohio R. Co. v. Kepner, 1941, 62 S. Ct. 6, 314 U. S. 44, 86 L. Ed. 28, which was prosecuted under the Federal Employer's Liability Act in New York, although the accident occurred and the employee resided in Ohio. The new subsection requires the court to determine that the transfer is necessary for convenience of the parties and witnesses, and further, that it is in the interest of justice to do so."

The federal courts, in exercising their discretion under this provision, are thus not set adrift on an uncharted sea, to order transfers according to their personal notions of justice. They are explicitly referred to the body of doctrine in Anglo-American law known as *forum non con-*

*veniens,* a doctrine which was certainly well developed at the time of the passage of the new Code. Indeed, shortly before the revision was introduced in Congress, this Court handed down two decisions setting forth the considerations which should govern the exercise of the trial judge's discretion. *Gulf Oil Corp.* v. *Gilbert,* 330 U. S. 501; *Koster* v. *Lumbermens Mutual Casualty Co.,* 330 U. S. 518. These opinions clearly evinced the attitude with which these matters should be approached, the standard to be applied:

> "It is often said that the plaintiff may not, by choice of an inconvenient forum, 'vex,' 'harass,' or 'oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp.,* 330 U. S., at 508.

> "Where there are only two parties to a dispute, there is good reason why it should be tried in the plaintiff's home forum if that has been his choice. He should not be deprived of the presumed advantages of his home jurisdiction except upon a clear showing of facts which either (1) establish such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience, which may be shown to be slight or nonexistent, or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative and legal problems. In any balancing of conveniences, a real showing of convenience by a plaintiff who has sued in his home forum will normally outweigh the inconvenience the defendant may have shown." *Koster,* 330 U. S., at 524.

There was a direct reference to the *Koster* decision in hearings before the Senate Committee considering the 1948 Code. Hearings before a Subcommittee of the Senate Committee on the Judiciary on H. R. 3214, 80th Cong., 2d Sess. 73–74.

The basic issue in this case is whether the district judge should exercise his discretion in the light of these opinions, and in the light of *forum non conveniens* doctrine generally (of which these Supreme Court decisions are a particularization), or whether § 1404 (a) expands the range of his discretion to an as yet unstated degree, and removes these decisions and other *forum non conveniens* cases as guiding precedents. The Courts of Appeals have divided on the issue. With the opinions cited by the majority, compare *Ford Motor Co.* v. *Ryan,* 182 F. 2d 329; *Nicol* v. *Koscinski,* 188 F. 2d 537; *Wiren* v. *Laws,* 90 U. S. App. D. C. 105, 194 F. 2d 873. But see *Amalgamated Assn.* v. *Southern Bus Lines,* 172 F. 2d 946, 948. The section itself is merely a restatement, in very generalized form, of the considerations thought to govern the question of *forum non conveniens.* The particular words or their equivalents recur in the cases and literature on the subject.[1] The Reviser's Notes repeat these factors and

---

[1] See *Koster* v. *Lumbermens Mutual Casualty Co., supra,* at 527 ("convenience of the parties and the ends of justice"); *id.,* at 530 ("interests of justice"); *Gulf Oil Corp.* v. *Gilbert, supra,* at 507 ("convenience of witnesses and the ends of justice"); *Canada Malting Co.* v. *Paterson Steamships, Ltd.,* 285 U. S. 413, 423 ("decline, in the interest of justice, to exercise jurisdiction, where the suit is between aliens or non-residents"); *National Shawmut Bank* v. *City of Waterville,* 285 Mass. 252, 258, 189 N. E. 92, 95 ("ends of justice"); *Universal Adjustment Corp.* v. *Midland Bank,* 281 Mass. 303, 313, 184 N. E. 152, 158 ("ends of justice"); *Great Western R. Co.* v. *Miller,* 19 Mich. 305, 315 ("inconveniences and the danger of injustice"); *Jackson & Sons* v. *Lumbermen's Mutual Casualty Co.,* 86 N. H. 341, 343, 168 A. 895, 896 ("ends of justice"); *La Société du Gaz de Paris* v. *La Société Anonyme de Navigation "Les Armateurs Francais,"* [1926] Sess. Cas. (H. L.) 13, 16, 18, 22 ("the interests of all the

refer explicitly to *forum non conveniens*. Ordinarily, these considerations, standing alone, would afford cogent grounds for finding that the old doctrine was to continue as the prevailing rule. This Court said as much in *Ex parte Collett*, 337 U. S. 55, 56, when it posed the issue:

> "In this case we must decide whether the venue provisions of the Judicial Code *render applicable* the doctrine of *forum non conveniens* to actions under the Federal Employers' Liability Act." (Emphasis supplied.)

We held the doctrine was applicable to such cases.

But now it is argued that since § 1404 (a) has changed the judicial response to the inconvenient forum, providing for transfer rather than dismissal, the trial judge may exercise a broader discretion than was permissible under the old rule. The opinion of the Court, adopting this view, goes far toward assigning to the trial judge the choice of forums, a prerogative which has previously rested with the plaintiff. In so doing, the majority completely ignores the judicial and legislative background of *forum non conveniens* in cases arising under the Federal Employers' Liability Act.

Section 6 of the FELA was amended in 1910 to permit suits to be brought "in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time

---

parties, and . . . the ends of justice"); *Logan* v. *Bank of Scotland*, [1906] 1 K. B. 141, 149, 150 ("inconvenience" and "injustice"); *Williamson* v. *North-Eastern R. Co.*, 11 Sess. Cas. (4th Ser.) 596, 598 ("ends of justice"). These cases and their terminology are covered in Barrett, The Doctrine of *Forum Non Conveniens*, 35 Calif. L. Rev. 380; Blair, The Doctrine of Forum Non Conveniens in Anglo-American Law, 29 Col. L. Rev. 1; Braucher, The Inconvenient Federal Forum, 60 Harv. L. Rev. 908; Dainow, The Inappropriate Forum, 29 Ill. L. Rev. 867; Foster, Place of Trial—Interstate Application of Intrastate Methods of Adjustment, 44 Harv. L. Rev. 41.

of commencing" the action. 36 Stat. 291, as amended, 45 U. S. C. § 56. We held that the congressional purpose manifested by this provision precluded the application of *forum non conveniens* to suits under the Act. *Baltimore & Ohio R. Co.* v. *Kepner,* 314 U. S. 44; *Miles* v. *Illinois Central R. Co.,* 315 U. S. 698. Agitation in Congress to limit venue under the FELA culminated in the attempted passage of the Jennings Bill, H. R. 1639, 80th Cong., 1st Sess.; the bill passed the House by a narrow margin, 93 Cong. Rec. 9193–9194, only to die in the Senate. But the 1948 revision of the Judicial Code, characterized by its legislative leaders as a noncontroversial revision and codification, see *Ex parte Collett, supra,* at 62, was held to overturn the *Kepner* and *Miles* decisions and make *forum non conveniens* applicable to actions under the FELA. In applying § 1404 (a) to FELA cases, this Court said in *Collett:*

> "The Code, therefore, does not repeal § 6 of the Federal Employers' Liability Act. We agree with petitioner that Congress had no such intention, as demonstrated by its failure to list the section in the meticulously prepared schedule of statutes repealed. We cannot agree that the order before us effectuates an implied repeal. The inapplicability of *forum non conveniens* to Liability Act suits derives from the *Kepner* decision. . . . Congress chose to remove its judicial gloss via another statute." *Id.,* at 60–61.

Removal of the "judicial gloss" would merely repeal the *Kepner* doctrine and thus make FELA suits, along with any civil action, subject to *forum non conveniens.* This Court asserted just that in *Pope* v. *Atlantic Coast Line R. Co.,* 345 U. S. 379, 383:

> "We have heretofore held that § 1404 (a) makes *the doctrine of forum non conveniens applicable to*

*Federal Employers' Liability Act cases* brought in federal courts and provides for the transfer of such actions to a more convenient forum. *Ex Parte Collett,* 337 U. S. 55 (1949)." (Emphasis supplied.)

Again in *Kerotest Mfg. Co.* v. *C-O-Two Fire Equipment Co.,* 342 U. S. 180, 186, we said:

"And if the manufacturer is joined as an unwilling defendant in a *forum non conveniens,* he has available upon an appropriate showing the relief provided by § 1404 (a) of the Judicial Code. ·62 Stat. 869, 937, 28 U. S. C. § 1404 (a)."

And as late as 1953, JUSTICES JACKSON, BLACK, and MINTON, dissenting in *Wells* v. *Simonds Abrasive Co.,* 345 U. S. 514, 522, made this statement:

"28 U. S. C. § 1404 (a) authorizes certain transfers of any civil action from state to state for the convenience of witnesses or of parties, or in the interests of justice. *The purpose was to adopt for federal courts the principles of forum non conveniens. Ex Parte Collett,* 337 U. S. 55. These are broad and imprecise and involve such considerations as the state of the court's docket. *Gulf Oil Corp.* v. *Gilbert,* 330 U. S. 501." (Emphasis supplied.)

None of these cases is even mentioned by the majority. In each is implicit the principle that § 1404 (a) embodies the doctrine of *forum non conveniens;* in each there is the uniform understanding of members of this Court that the language of § 1404 (a) is merely a paraphrase of that rule. Instead, the majority applies a variation of the old Jennings Bill, which Congress refused to adopt at the same session in which it inserted § 1404 (a) into the new Code. There is certainly nothing even remotely connected with the enactment of § 1404 (a) to indicate that when the section and the Reviser's Notes referred

to *forum non conveniens*—particularly as articulated in the then-recent *Gulf Oil* and *Koster* cases—they meant the Jennings Bill or anything like it. Still the majority adopts a slight modification of that rejected provision.

Much is made of the fact that there is no legislative record of opposition to the adoption of § 1404 (a). This, if true, is explained by the fact that the Reviser's Notes, as well as Congress' refusal to adopt the Jennings Bill, may well have lulled any opposition into a false feeling of security. The statements in *Gulf Oil* and *Koster* that the plaintiff's choice could be disturbed only if "the balance is strongly in favor of the defendant" and that this "rarely" is the case, together with the defeat of the Jennings Bill, is certainly sufficient evidence that Congress had no intention of seriously interfering with an FELA plaintiff's choice of forum. In this connection, we note the emphasis in *Collett*, 337 U. S., at 64, on the difference between the Jennings Bill and § 1404 (a); this is narrowed considerably if we permit a larger discretion in the district judge than was available under *forum non conveniens*.

It is said that we must uphold a clear change in the statute made by the Congress. We certainly agree. But the language of § 1404 (a), considered against the background of judicial discussion in this area, could mean nothing but the doctrine of *forum non conveniens*, and the Reviser's Notes state that the purpose of the change was to apply *forum non conveniens* rules to the transfer of civil cases in the federal courts. The direction of Congress is clear and unmistakable. Our duty is so to interpret § 1404 (a), not to expand and enlarge upon it. Changes of this type should be made by the legislative branch. And the fact that Congress has through codification extended a previously recognized procedure to civil cases generally, with one slight change (*i. e.*, transfer rather than dismissal), does not give this Court

a blank check to recast the underlying law to suit its fancy.

Concluding that the prior tenets of *forum non conveniens* apply, embracing the standards laid down in *Gulf Oil* and *Koster,* we cannot help but agree with the district judge that his discretion would have been exercised differently in the instant case if he had applied the law of those decisions. Without detailing all the facts here involved, we note that one of the plaintiffs resided in the district where this suit was brought. Under the usual *forum non conveniens* approach, this would virtually suffice, in and of itself, to preclude a refusal to retain the case for trial. See Barrett, *supra,* at 413; Braucher, *supra,* at 916–917, 919; Dainow, *supra,* at 880. After all, the *forum non conveniens* situation generally envisaged is one involving a foreign cause of action *and* nonresident parties. See Blair, *supra,* at 34; Foster, *supra,* at 53. Apparently but one jurisdiction stands squarely behind the proposition that a court may decline to hear a personal injury suit, brought by a *bona fide* resident, in order to spare the defendant inconvenience and expense. *Williamson* v. *North-Eastern R. Co., supra.* That is the law in Scotland, a jurisdiction long noted for its distinctive doctrines in this area.[2] *Forum non conveniens* has

[2] Commentators, though endorsing the wider use of *forum non conveniens,* have been critical of the decision, Dainow, *supra,* at 884, n. 73, and have pointed up the civil law basis of its reasoning, Blair, *supra,* at 21, n. 100.

The reasoning in *Gore* v. *United States Steel Corp.,* 15 N. J. 301, 104 A. 2d 670 (1954), may be consistent with the *Williamson* result, but that case, decided after § 1404 (a) and relying on litigation under that section, involved nonresidents. And dicta to the same effect in *Universal Adjustment Corp.* v. *Midland Bank, supra,* 281 Mass., at 315, 184 N. E., at 159, must be read in the context of the litigation before the court: suit by a resident assignee of a foreign claim against a foreign corporation. Compare *United States Merchants' & Shippers' Ins. Co.* v. *A/S Den Norske Afrika Og Australie Line,* 65 F. 2d 392.

42

no such impact in this country, and, in fact, *Koster* may be regarded as an extreme decision in depriving a plaintiff of his home forum.[3]  With this the state of the law, both now and in 1948 when the Code was adopted, we certainly should require a more explicit direction from Congress before depriving an injured party of his privilege under the FELA of bringing suit in his own district—at least when the standards of *Koster* have not been applied.

The district judge admitted that he had not exercised his discretion in light of *Koster* and *Gulf Oil,* the applicable decisions of this Court; he felt bound by a contrary decision of the Court of Appeals.  He indicated very clearly that his decision would have been otherwise if he were free to follow the opinions we consider controlling. We should reverse and give the trial judge an opportunity to exercise his discretion under the proper standards.

The question is one of considerable importance in the administration of the lower federal courts, and, considering the inadequacy of appeal, should be settled in this case if it is to be settled at all in the near future.  Every appellate court which has passed on § 1404 (a) implicitly recognizes the necessity for settling issues of law under

---

[3] See *American Ry. Express Co.* v. *H. Rouw Co.,* 173 Ark. 810, 294 S. W. 401; *Gamburg* v. *Ray,* 167 La. 865, 120 So. 480; *Arizona Commercial Mining Co.* v. *Iron Cap Copper Co.,* 119 Me. 213, 110 A. 429; *Peters* v. *Equitable Life Assur. Co.,* 196 Mass. 143, 81 N. E. 964; *Tri-State Transit Co.* v. *Mondy,* 194 Miss. 714, 12 So. 2d 920; *Gregonis* v. *Philadelphia & R. Coal & Iron Co.,* 235 N. Y. 152, 139 N. E. 223; *de la Bouillerie* v. *de Vienne,* 300 N. Y. 60, 89 N. E. 2d 15; cf. *O'Neill* v. *Cunard White Star, Ltd.,* 160 F. 2d 446; *The Saudades,* 67 F. Supp. 820.  Even in those cases where the objection is that the suit creates an unreasonable burden on interstate commerce, the fact that suit is brought in the plaintiff's home forum, though it may lack the near-conclusiveness it has in *forum non conveniens* cases, is nevertheless a fact of "high significance."  *International Milling Co.* v. *Columbia Transportation Co.,* 292 U. S. 511, 520.

the section. Even those courts which have refused relief, expressing the view that mandamus is an inappropriate remedy, have gone on to discuss the merits of the question presented. *In re Josephson,* 218 F. 2d 174; *All States Freight, Inc.* v. *Modarelli,* 196 F. 2d 1010; cf. *Jiffy Lubricator Co.* v. *Stewart-Warner Corp.,* 177 F. 2d 360. The Court's opinion in this case, by reserving the mandamus issue, follows the same course. We note, further, that the majority of Court of Appeals decisions dealing with § 1404 (a) find mandamus appropriate in circumstances less compelling than these. *Ford Motor Co.* v. *Ryan, supra; Atlantic Coast Line R. Co.* v. *Davis,* 185 F. 2d 766; *Shapiro* v. *Bonanza Hotel Co.,* 185 F. 2d 777; *Wiren* v. *Laws, supra; Chicago, R. I. & P. R. Co.* v. *Igoe,* 212 F. 2d 378; cf. *Nicol* v. *Koscinski, supra.*

I would reverse and direct that the transfer application be determined under *forum non conveniens,* and particularly the *Gulf Oil* and *Koster* decisions. The answer to the majority's contention that this would unduly curtail a desirable reform is simply that this dispute involves not merely "forum shopping," but the whittling away by judicial interpretation of the privileges and benefits of working men under the Federal Employers' Liability Act. The battle over the scope of their rights should be fought out in the Congress—as it was in the case of the Jennings Bill—and not in the courts.

The Reviser's Notes say that § 1404 (a) goes no further than *forum non conveniens.* That was what Congress acted upon, not the private opinion of some of the members of the Reviser's Committee. These distinguished participants may have thought their reform went beyond *Collett.* If so, they should have communicated their thought to the Congress where the final responsibility rests.