Peter SCARAMUZZO, an infant over the age of 14 years, by his father and natural guardian, Angelo Scaramuzzo and Angelo Scaramuzzo, Plaintiffs,

v.

AMERICAN FLYERS AIRLINE CORPORATION, Defendant.

Civ. A. No. 66–C–858.

United States District Court
E. D. New York.

Nov. 7, 1966.

Reargument Denied Dec. 6, 1966.

Daniel A. Novok, New York City, for plaintiff.

Condon & Forsyth, New York City, for defendant; Shaw, Pittman, Potts, Trowbridge & Madden, Washington, D. C., of counsel, by Phillip D. Bostwick, Washington, D. C.

MISHLER, District Judge.

Motion to transfer this action for personal injuries to the Eastern District of Oklahoma pursuant to 28 U.S.C. § 1404 (a).[1]

The infant plaintiff is one of fifteen soldiers who survived an air crash near Ardmore Airport, which is within the territorial jurisdiction of the Eastern District of Oklahoma. Seventy-seven soldiers and the crew of six were killed. The crash occurred on a flight from Monterey, California, destined for Columbus, Georgia. The stop at Ardmore was scheduled for refueling and crew change. Two deceased soldiers resided in Oklahoma. Eleven soldiers resided in New York—four survived, seven were killed; of those eleven, seven resided in the Eastern District of New York; three of the survivors live in this district. The other soldiers resided in twenty-three other states, two in Puerto Rico and one in Czechoslovakia.

The affidavit in support of the motion states that the defendant was doing business within the Eastern District of Oklahoma [28 U.S.C. § 1391(c)] and that the action "might have been brought," there.

Nine actions are presently pending in six United States District Courts. One action is pending in the Eastern District of Oklahoma instituted by an Administratrix residing in Pennsylvania on behalf of a deceased resident of Pennsylvania. Two actions are pending in the Northern District of Oklahoma—one of which was instituted by an Administrator residing in Colorado on behalf of a deceased resident of Colorado. Defendant moved for transfer, in all the pending cases, to the Eastern District of Oklahoma. "If any cases are transferred defendant intends to file a motion in the Eastern District of Oklahoma to have all cases there consolidated for the purposes of discovery, pre-trial and a single trial on the issue of liability." [Aff. Phillip D. Bostwick, p. 6]. Attached to the moving papers is a list of forty-nine witnesses who defendant expects will be deposed "by one or more of the parties to the pending actions, and that a large percentage of the persons on this list will be called by one or more parties to testify at trial." [Aff. Phillip D. Bostwick, p. 7].

Plaintiff suffered an amputation of the right leg nine inches below the knee and other injuries including severe burns. He is presently being treated for revision of the stump of the right leg and the other injuries at the Army Base Hospital at Fort Sam Houston in San Antonio, Texas. It is expected, that he will return home soon, for continued treatment.

Upon oral argument, the Court inquired of defendant whether it would pay the travel costs of plaintiff, his witnesses and counsel for trial in the Eastern District of Oklahoma. Defendant argued against such a condition, claiming it would be a penalty and should not be imposed.

1. 28 U.S.C. § 1404. Change of Venue.
 (a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

*Purpose of § 1404(a)*

■ The enactment of § 1404(a) vested the district courts with power to transfer upon a lesser showing of inconvenience than previously existed under the doctrine of *forum non conveniens.* Norwood v. Kirkpatrick, 349 U.S. 29, 30, 75 S.Ct. 544, 545–546, 99 L.Ed. 789 (1955). The purpose of the statute is expressly stated, i. e., "For the convenience of parties and witnesses, in the interest of justice * * *."

■ The statute did not negate the traditional right of the plaintiff to choose the forum. Norwood v. Kirkpatrick, supra at 32, 75 S.Ct. at 546. In a diversity suit, where the plaintiff venues the action in his home district, the burden is upon the moving defendant to show that the balance of convenience is in his favor. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947); 1 Moore, Federal Practice, ¶ 0.145[5], at 1787 (2d ed. 1964); Kaufman, J., Observations on Transfers Under Section 1404(a) of The New Judicial Code, 10 F.R.D. 595, 605 (1950). The defendant must list factors to show that the convenience of parties and witnesses, and the interest of justice, are balanced strongly in his favor, Ford Motor Co. v. Ryan, 182 F.2d 329, 330 (2d Cir.), cert. denied, 340 U.S. 851, 71 S.Ct. 79, 95 L.Ed. 624 (1950). In Popkin v. Eastern Air Lines, Inc., 253 F.Supp. 244 (E.D.Pa.1966), on remand from Van Dusen v. Barrack, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964), the Court said:

"* * * Plaintiffs right to choose a forum is a very relevant consideration in weighing the disadvantages to defendants, especially when plaintiffs are residents of the transferor forum [cases cited]." Id. at p. 246.

■ A showing of inconvenience to the defendant is not enough for the granting of § 1404(a) relief, where the transfer would merely shift the inconvenience to the other party. Miracle Stretch Underwear Corp. v. Alba Hosiery Mills, 136 F.Supp. 508, 511 (D.Del.1955).

*Factors*

■ The factors to be considered were stated in Gulf Oil Corp. v. Gilbert, supra, 330 U.S. at 508, 67 S.Ct. at 843, as follows:

"Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make the trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial."

Several of these factors are raised by defendant in support of its motion, but these "important considerations" must be weighed with the traditional right of the plaintiff "conferred by statute, of choosing the forum * * *." Ford Motor Co. v. Ryan, supra, 182 F.2d at 330.

*Inconvenience of Witnesses*

Of the forty-nine prospective witnesses listed by defendant in his papers, the first twenty-one are residents of Ardmore, who saw and/or heard the aircraft pass overhead. Witness No. 22 flew over the airport in a private plane shortly after the crash and observed the weather conditions. Witnesses numbered 24 to 30 are employees of defendant; the value of their testimony is questionable. Witness No. 31, an F.A.A. service station attendant, is described as being the last person in radio contact with the aircraft; he took surface weather observations at Ardmore Airport. Witness No. 32, a F.A.A. air traffic control specialist, was in radio communication with the aircraft; he cleared

the aircraft for approach to land at the Ardmore Airport. Witness No. 33 is a U.S. Weather Bureau forecaster and all that is said of his testimony is that he was on duty at Fort Worth prior to the crash. Witness No. 34 is a meteorologist, and he observed a thunder-storm cell on radar and took a radar photograph. All the rest are doctors and medical personnel who aided the sick and performed autopsies on the dead, and the embalmers and funeral directors who buried the dead.

The only medical witnesses whose testimony is of significance, however, are: Dr. Earl F. Rose, Medical Examiner of Dallas County, who performed the autopsy on Reed W. Pigman, the pilot of the plane and defendant's principal officer; Dr. Thomas Cross, F.A.A. Medical Examiner, who gave Mr. Pigman his aviation medical examinations; and Dr. John P. F. Fershtand of Fort Worth, Texas, Mr. Pigman's personal physician.

One of plaintiff's theories of liability is that Mr. Pigman was suffering from coronary artery arteriosclerosis, and that the crash occurred when Mr. Pigman suffered a cardiac insufficiency. The testimony of the doctors who knew of his condition before the flight, and the testimony of the doctor performing the autopsy, is material on this issue. It is noted, however, that Drs. Rose and Fershtand are not within the territorial jurisdiction of the district court of the Eastern District of Oklahoma.

Judge Kaufman, in Observations on Transfers Under Section 1404(a) of The New Judicial Code, supra 10 F.R.D. at 607, decried the " * * * tendency to weigh the number of witnesses." He continued: "The district judges must be able to see through the voluminous affidavits presented and determine, as best possible, who are the key witnesses and what witnesses need be called, rather than merely count up the witnesses for each side." Id., pp. 607–608; see Mims v. Proctor & Gamble Distrib. Co., 257 F.Supp. 648, 655 (D.S.C.1966).

Defendant cites Glenn v. Trans World Airlines, Inc., 210 F.Supp. 31 (E.D.N.Y. 1962); Rodgers v. Northwest Airlines, Inc., 202 F.Supp. 309 (S.D.N.Y.1962); Cressman v. United Air Lines, Inc., 158 F.Supp. 404 (S.D.N.Y.1958), and Winsor v. United Air Lines, Inc., 153 F.Supp. 244 (E.D.N.Y.1957), in support of its application. These cases are clearly distinguishable from the case at bar. In Rodgers, Cressman and Winsor, neither plaintiffs' administrators, nor the decedents, were citizens or residents of New York. In Glenn, the public administrator represented the mother of the decedent (Kmetty), a citizen and resident of Hungary, and a decedent named Kiss. A sister of decedent obtained letters of administration in Ohio and commenced an action in the Northern District of Ohio. Judge Zavatt severed and transferred the Kmetty case to the Northern District of Ohio and retained jurisdiction over the Kiss case.

In this case, three survivors live in California, four in New York, one in Texas, two in New Jersey, one in Tennessee, one in Arkansas, one in Virginia, one in Alabama, and one in Wyoming. All the survivors are fact witnesses on the liability issue, and none of them reside in the Eastern District of Oklahoma. Furthermore, the medical witnesses, and the records bearing on the issue of damages, will come from Texas and New York. If the determination of this motion were to rest on the balancing of the convenience of the fact witnesses on the liability issue alone, the scales would not favor transfer; add to the weight against transfer, the inconvenience to the plaintiff's witnesses on the issue of damages and the scales weigh heavily against transfer.

### Effects of Proposed Consolidation

Defendant's argument that consolidation of the actions arising from this crash will result in substantial savings in time and money, at both the pre-trial and trial stages, is attractive, although somewhat illusory. First, as was noted earlier, the passengers resided in 25 different states and the Commonwealth of Puerto Rico; and cases are now pending

in six different district courts in four different states. Actions will probably be brought in many others. Since the bases upon which transfers may be granted are general, and therefore, susceptible to varying treatment, it is unlikely that all the courts will agree with defendant and transfer the cases before them to Oklahoma. This will be especially true were the plaintiff is one of the fifteen survivors. Thus, even if consolidation would, as defendant suggests, result in substantial economies, the probability is that they will be minimal in view of the likelihood that many of the cases will not be transferred to Oklahoma.

Second, while consolidation would lead to a simplified pre-trial procedure, the amount of duplication and inconvenience normally encountered when there are separate trials in multi-plaintiff accident cases is often exaggerated. Experience with air crash cases in this district demonstrates that demands for economy in time and money dictate practical solutions to the multifarious problems in discovery procedures; lawyers avoid repetitious and useless depositions. See Popkin v. Eastern Air Lines, Inc., supra, 253 F.Supp. at 250.

Third, even if most or all of the cases are transferred to Oklahoma, there is no assurance that the promise of a single trial can be realized. The Supreme Court has approved the doctrine, first enunciated by the Second Circuit, that when a case is transferred under § 1404(a) " ' * * * whatever rights the parties have acquired under state law should remain unaffected. The case should remain as it was in all respects but location.' " Van Dusen v. Barrack, supra, 376 U.S. at 633, 84 S.Ct. at 818, quoting H. L. Green Co. v. McMahon, 312 F.2d 650, 653 (2d Cir. 1962).

[I]n cases * * * where the defendants seek transfer, the transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue. A change of venue under § 1404(a) generally should be with respect to state law, but a change of courtrooms. Van Dusen v. Barrack, supra at 639, 84 S.Ct. at 821.

In some cases, however, this doctrine may serve to render consolidation impossible. Plaintiff's right to the benefit from the doctrine of *res ipsa loquitur* is illustrative. Defendant's counsel stated upon oral argument that as he understood the law of Oklahoma, a plaintiff who pleads or proves specific acts of negligence is not entitled to benefit from the inference created by that doctrine. The New York law is contra: Citrola v. Eastern Air Lines, Inc., 264 F.2d 815 (2d Cir. 1959); Lobel v. American Airlines, Inc., 192 F.2d 217 (2d Cir. 1951), cert. denied, 342 U.S. 945, 72 S.Ct. 558, 96 L.Ed. 703 (1952); George Foltis, Inc. v. City of New York, 287 N.Y. 108, 38 N. E.2d 455, 153 A.L.R. 1122 (1941).

If many of the actions arising from this crash are transferred to Oklahoma, some of them will come from states whose law on *res ipsa* agrees with the Oklahoma law, and others whose law is the same as New York's. It seems certain that the laws of the transferor states will differ in other areas as well, and that to avoid confusing the jury, many of the actions will have to be tried separately anyway.

And, finally, a district judge in Oklahoma is most familiar with Oklahoma law, not New York law. His research problems are even greater when he is called upon to apply the laws of many different states. The Supreme Court has expressed its concern with this problem in the following language:

* * * There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself. Gulf Oil Corp. v. Gilbert, supra, 330 U.S. at 509, 67 S.Ct. at 843.

It is possible, however, that the benefits of consolidation will be achieved

even if defendant's motion to transfer is denied. There is some authority in this Circuit which suggests that if the pending action in the Eastern District of Oklahoma results in verdict unfavorable to the defendant, it might be determinative of the liability issue here. See Berner v. British Commonwealth Pacific Airlines, Ltd., 346 F.2d 532 (2d Cir. 1965), cert. denied, 382 U.S. 983, 86 S.Ct. 559, 15 L.Ed.2d 472 (1966). In any event, regardless of the decisions on the motions to transfer, the issue of damages will require separate trials.

Defendant points out that the median delay in trial time for the Eastern District of Oklahoma is one month while in this district it is 37 months. In a close case this could be a make-weight argument,[2] but the other factors in this case far outweigh this public interest.

 In summary, the defendant in this application seeks to shift the expense and inconvenience of pending actions in the various jurisdictions on to the shoulders of various claimants. No showing has been made that "the interest of justice" will be promoted.

The motion is denied.

Settle order on two (2) days notice.

### On Motion for Reargument

Defendant moves to reargue its motion to transfer the above action to the United States District Court for the Eastern District of Oklahoma. The motion was denied in a decision of this Court dated November 7, 1966.

Two grounds are stated in support of the present motion, and both relate to colloquy between the Court and defendant's counsel at the time of argument:

First, defendant refers to statements made by counsel concerning the law of

the State of Oklahoma, with particular reference to the principle of *res ipsa loquitur*, which were later referred to in the Court's opinion. The pertinent portion of the opinion discussed the nature of a trial in a transferee forum, and the "change of courtrooms" doctrine of Van Dusen v. Barrack, 376 U.S. 612, 639, 84 S.Ct. 805, 821, 11 L.Ed.2d 945 (1964). The opinion added:

"In some cases, however, this doctrine may serve to render consolidation impossible. Plaintiff's right to the benefit from the doctrine of *res ipsa loquitur* is illustrative. Defendant's counsel stated upon oral argument that as he understood the law of Oklahoma, a plaintiff who pleads or proves specific acts of negligence is not entitled to benefit from the inference created by that doctrine. The New York law is contra * * * [cases cited]."

Defendant now argues "that this is neither an accurate nor up-to-date statement of the law of New York on this matter," citing Zaninovich v. American Airlines, Inc., 26 A.D.2d 155, 271 N.Y.S. 2d 866 (1st Dep't 1966). The Court in that case stated that under certain circumstances, "a plaintiff must elect whether he relies on *res ipsa loquitur* or proof of specific cause of accident." *Id.* at 157, 271 N.Y.S.2d at 869. When the election is required, however, is still uncertain. In *Zaninovich* "* * * it * * * [was] certainly arguable," the Court said, "that plaintiffs proceeded far enough in the proof of specific cause of the accident * * *." *Id.* at 158, 271 N.Y.S.2d at 870. But the Court also noted that:

"* * * the requirement to elect has been blunted by a corollary rule which permits the plaintiff to rely on the doctrine despite evidence of specific cause of accident so long as the evidence

2. Cf. Chicago, R. I. & P. R. R. v. Igoe, 220 F.2d 299 (7th Cir.) cert. denied, 350 U.S. 822, 76 S.Ct. 49, 100 L.Ed. 735 (1955). (Death action both decedent and wife resided in transferee district and the accident occurred in transferee district);

Koehring Co. v. Hyde Constr. Co., 324 F. 2d 295 (5th Cir. 1963). (Contract action where construction was in transferee district and practically all the witnesses resided there.)

does not fully account for the accident * * * [cases cited]." [1] *Ibid.*

 This problem in the application of the doctrine of *res ipsa loquitur* was used only as illustrative of the multifarious problems that arise when actions pending in many different courtrooms are transferred to a single distant location. Even if the doctrine of *res ipsa loquitur* would present no problems for a transferee court in this case, however, the discussion had on that principle of law, and the nuances of the doctrine discussed by the state court in *Zaninovich*, serve as examples of the difficulties that are sure to be encountered on other points of law by a transferee court. Certainly the likelihood and seriousness of such difficulties are facts which a court should consider in determining the advisability of a transfer. Indeed, a court's limited competency in divining the law of a foreign jurisdiction was recently recognized in San Antonio v. Timko, 2d Cir., Nov. 21, 1966, 368 F.2d 983.

 Second, defendant refers to a query put to its counsel by the Court as to whether it would be willing to pay the travel costs of plaintiff and his witnesses and counsel, for a trial in Oklahoma. His negative reply was also mentioned in the preliminary statement of the opinion. An offer to pay these costs, however, would not change the final determination. It would only modify the paragraph on page 751 of the opinion to read:

"In summary, the defendant in this application seeks to shift the inconvenience of pending actions in the various jurisdictions on to the shoulders of various claimants. No showing has been made that 'the interest of justice' will be promoted."

The motion to reargue is denied.[2] The Court adheres to its original decision.

Settle order on two (2) days notice.

---

1. It is of interest that a segment of the trial lawyers, in their recent association publication, criticized *Zaninovich* in the following language: " * * * with respect, we doubt the court's conclusion that under New York or general law, plaintiff must elect between reliance upon res ipsa loquitur and pleading or proof of specific acts of negligence * * *." [authorities cited] American Trial Lawyers Association News Letter Vol. 9, No. 9-Nov. 1966.

2. A letter from defendant's counsel dated Dec. 1, 1966, with enclosures, advises of two memoranda decisions and orders made in the U.S. District Court for the Northern District of Illinois, Eastern Division, transferring the cases of Larr v. American Flyers and Turner v. American Flyers. The basis for the transfer is not discussed. It is noted that both actions are for wrongful death.